PS

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LAWRENCE PEREZ,

        Plaintiff,

  -v-                                            22-CV-6092-FPG
                                                      ORDER
ANNUCCI, et al.,

        Defendants.
_____

*Pro se* Plaintiff Lawrence Perez, who is currently incarcerated at the Wende Correctional Facility ("Wende"), filed a Complaint pursuant to 42 U.S.C. § 1983 alleging that he was improperly placed in the sex offender treatment program. ECF No. 1. The Court conducted an initial screening of Plaintiff's claims pursuant to 28 U.S.C. § 1915A(b) and dismissed the Complaint with leave to amend on April 4, 2022. ECF No. 3 (the "first screening order").

Current pending before the Court is Plaintiff's Amended Complaint, ECF No. 4. For the reasons discussed below the Amended Complaint is dismissed with prejudice pursuant to 28 U.S.C. § 1915A(b).

## DISCUSSION

**I.    Legal Standard**

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)). The court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines that the action (1) fails to state a claim upon which

relief may be granted or (2) seeks monetary relief against a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A(b)(1)-(2).

In evaluating the Amended Complaint, the Court must accept all factual allegations as true and must draw all inferences in Plaintiff's favor.  *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999).  "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93, (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Boykin v. Keycorp*, 521 F.3d 202, 216 (2d Cir. 2008) ("[E]ven after *Twombly*, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases.").  Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure.  *Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004).

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir.1994)).  "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against a prison official under § 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert

that the defendant is a link in the prison's chain of command.  *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004).  The theory of *respondeat superior* is not available in a § 1983 action.  *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003).  "[T]here is no special rule for supervisory liability.  Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

**II.     Plaintiff's Original Allegations**

Plaintiff alleged that he was first notified on March 26, 2018 that he had been assessed on January 5, 2012 as needing "sex offender programming."  ECF No. 1 at 5, 22-23.  This assessment contradicted an earlier finding on May 14, 2010, indicating that he did not need such programming.  *Id*. at 5, 19-20.  Further, Plaintiff only became aware of the May 14, 2010 decision "while litigating against [the sex offender] program placement" on March 26, 2019.  *Id*.  The "Department of Corrections is required by statute to have potential participants screened by mental health person[n]el, prior to any determination; [Plaintiff] was not afforded this process."  *Id*.  Plaintiff further alleges that he did not meet the criteria for the program because it was based on "disputed facts, of which he was a[c]quitted by [the] jury" and were "solely provided by his co-defendant[,] whose testimony was incredible as a matter of law" and was "unsupported by any other evidence at trial."  *Id*. at 5-6.  Plaintiff's placement in the program has "stigmatized" him by "labelling him" as needing "sex offender treatment" and exposing him to further harm."  *Id*. at 6.

### III.     Plaintiff's Amended Allegations[1]

The amended allegations are substantially similar to the original allegations. ECF No. 4 at 6, 8. However, Plaintiff further alleges he was denied "the minimal standards of due process" during his assessment for sex offender treatment,

> including: adequate notice of facts or circumstances which might be used in such a determination; that a determination is taking place as to the application of said label, classification, and program placement, and; that an adversarial process would take place - prior to said determinations - where prisoners could offer proof and challenge the State's evidence.

*Id*. Plaintiff argues that he "has never been convicted of any sex offense, nor has the State accused him of any similar conduct in an adversarial proceeding. Instead, [D]efendant Jones made a determination based on conduct appearing in [Plaintiff's] pre-sentence investigation report (PSR), which she herself has determined would have a sexual basis." *Id*. He further alleges Jones failed to properly consider that his instant offense was "a non-sex crime," and she improperly determined that "the conduct referred to in the PSR was . . . 'sexual in nature' . . . in violation of the statutes established by the state's legislature which clearly defines such acts to be performed 'in whole or in substantial part for the purpose of direct sexual gratification of the actor'" under Mental Hygiene Law § 10.03(f) and (p). *Id*. at 7.[2] Plaintiff argues that New York State Corrections Law requires that the Office of Mental Health ("OMH") determine "if the acts considered were 'sexually motivated'" and that Defendant Jones does not work for OMH, nor was such a determination made

---

[1] The Court deems the exhibits attached to the Amended Complaint as part of the pleadings and considers them in this screening order. *Cooper v. Dennison*, No. 08-CV-6238 CJS, 2011 WL 1118685, at *1 (W.D.N.Y. March 24, 2011) ("Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered.").

[2] According to exhibits attached to the Amended Complaint, including two Non-Sex Offense Referrals for the Sex Offender Counseling and Treatment Program, Plaintiff's PSR states that sexual conduct, specifically branding the victim's genitals with a hammer and electrocuting the victim's genitals, took place during the second-degree murder offense for which Plaintiff is currently incarcerated. ECF No. 4-1 at 12-16, 18.

4

by OMH. *Id*. at 7-8. Moreover, Plaintiff disputed the facts of the uncharged acts to the trial court and the conduct "was not suggested to be sexual in nature" at that time. *Id*. at 7.

Plaintiff contends that "[b]ecause the State affords a predicate to govern official decision making in this context -- according to the above statutes and guidelines -- the State has created a liberty interest which has been eschewed by the Defendant." *Id*. at 8. Further, "[s]ince the classification of being a sex offender is precisely the type of atypical and significant hardship on prisoners, in relation to the ordinary incidents of prison life, the Supreme Court has created a liberty interest according to *Sandin v. Conner*." *Id*. Plaintiff argues that Defendant Jones's January 5, 2012 decision, which reversed her May 14, 2010 determination that he "had no need for sex offender programming," was "based on the same facts" and "is the very definition of arbitrary and capricious." *Id*.

IV.  **Sex Offender Program Claim**

Plaintiff again contends that his placement in sex offender programming violates his due process rights.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012) (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)). "[S]tandard analysis under that provision proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016) (quoting *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011)). Thus, "[t]he threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." *Perry v. McDonald*, 280 F.3d 159,

173 (2d Cir. 2001). "Liberty interests may arise directly from the Due Process Clause itself or from statutes, regulations, or policies enacted by the state." *Victory*, 814 F.3d 59.

This Court has observed that "courts within the Second Circuit appear to be reaching a consensus that recommendations for sex offender classification and programming do not trigger due process rights." *Allah v. Perlman*, No. 16-CV-6596 EAW, 2017 WL 11685254, at *3 (W.D.N.Y. Aug. 22, 2017) (collecting cases) (quoting *Blake v. Fischer*, No. 09-CV-266 (DNH/DRH), 2010 WL 2522198, at *10 (N.D.N.Y. Mar. 5, 2010), *report and recommendation adopted*, No. 9:09-CV-266, 2010 WL 2521978 (N.D.N.Y. June 15, 2010)); *see also Mercer v. Sullivan,* No. 918CV1148MADATB, 2018 WL 6787159, at *5 (N.D.N.Y. Dec. 26, 2018) (collecting cases) ("Plaintiff did not have a protected liberty interest in being free from 'non-voluntary' sex offender treatment."); *Tinsley v. Goord*, No. 05 Civ. 3921 (NRB), 2006 WL 2707324, at *5 (S.D.N.Y. Sept. 20, 2006) ("[N]othing suggests that either New York state law or prison regulations have created a liberty interest in prisoners of avoiding classification as sex offenders or participating in related treatment programs." (citing N.Y. Correct. Law § 137 ("The commissioner shall establish program and classification procedures designed to assure . . . the assignment of [each] inmate to a program that is most likely to be useful in assisting him to refrain from future violations of the law"))). "[C]ourts have consistently found requiring participation in [sex offender] programs constitutional." *Blake*, 2010 WL 2522198, at *9; *accord Tinsley*, 2006 WL 2707324, at *5 ("Nor do we believe that requiring an inmate to participate in a sex offender treatment program 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995))).

As stated in the first screening order, ECF No. 3 at 5-6, "[a]n inmate's entire history is fair game when determining the inmate's counseling needs, and there is no constitutional infirmity in

directing sex-offender counseling based on a prior criminal history of sex offenses." *Steinmetz v. Cabrera*, No. 17-CV-1000, 2018 WL 671282, at *2 (W.D.N.Y. Jan. 30, 2018) (dismissing with prejudice under 28 U.S.C §§ 1915(e)(2)(B) and 1915A plaintiff's claim that he cannot be required to engage in sex-offender counseling because his conviction was not a qualifying offense) (citing *U.S. v. Zielinski*, 511 F. App'x 112, 115 (2d Cir. 2013) (summary order) ("We have held that sex offender conditions of supervised release may be reasonably related to a defendant's history and characteristics even though the instant offense was not a sex offense.")); *see also Vega v. Lantz*, 596 F. 3d 77, 83 (2d Cir. 2010) (reversing summary judgment in favor of plaintiff for a sex offender treatment requirement based on acquitted conduct); *United States v. Dupes*, 513 F. 3d 338, 344 (2d Cir. 2008) (affirming sex offender treatment as part of securities fraud sentence based on prior sex offense); *Sayles v. Fischer*, No. 08-CV-0747, 2011 WL 1199834, at *8 (W.D.N.Y. Mar. 29, 2011) (finding no procedural or substantive due process violations for sex offender program ("SOP") referral based on uncharged conduct and rejecting Plaintiff's argument "that he [must] be formally arrested, charged and prosecuted for a sex offense prior to being recommended for the SOP program.").

In the first screening order, the Court found that Plaintiff failed to establish a liberty interest in not being assigned to sex offender programming. ECF No. 3 at 6. Plaintiff was afforded the opportunity to amend his due process claim, but the amended pleading does not cure the deficiencies in the prior pleading. Accordingly, Plaintiff's claim against Defendant Jones is now dismissed with prejudice.

## CONCLUSION

For the reasons stated above, the Amended Complaint is dismissed with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915A. The Clerk of Court is directed to close this

case. The Court hereby certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *See Coppedge v. United States*, 369 U.S. 438 (1962). Requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

    IT IS SO ORDERED.

Dated: September 12, 2022
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York